IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MILDRED VALENCIA,**

      Plaintiff,

vs.                                              Civ. No. 00-484 JP/DJS

**WILLIAM A. HALTER, Acting Commissioner of Social Security,**[1]

      Defendant.

**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[2]

1.   Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits.  Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this

---

[1]   Pursuant to Fed.R.Civ.P. 25, William A. Halter, Acting Commissioner of Social Security is substituted for Kenneth S. Apfel, Commissioner, as the Defendant in this action.  Mr. Halter was nominated by President Bill Clinton on October 1, 1999, and confirmed by the United States Senate on November 10, 1999.  He was the first confirmed Deputy Commissioner of Social Security.

[2]   Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

matter for a rehearing.  The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings.  <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**<u>Administrative History</u>**

2.   Plaintiff applied for Supplemental Security Income benefits on September 10, 1996 alleging a disability which commenced on December 8, 1992.  Tr. 39 and 92. The Administrative Law Judge (ALJ) found that Plaintiff was not disabled.  Tr. 19.  The Appeals Council denied Plaintiff's request for review on two occasions.  Tr. 6 and 124.  The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**<u>Statement of the Facts</u>**

3.   Plaintiff alleges a disability due to seizures. Tr. 110, 120 and 183.  Plaintiff was born on August 3, 1956 and was 41 years old on the date of the ALJ's decision.  Tr. 18.  She has a general equivalency degree and past relevant work experience as a grocery store clerk and liquor store window sales clerk.  Tr. 88.

**<u>Issues</u>**

4.   Plaintiff alleges the ALJ made four errors. Specifically Plaintiff claims that: (1) the ALJ failed to develop the record at the administrative hearing regarding Plaintiff's mental and

physical impairments; 2) the ALJ failed to perform a proper credibility analysis regarding Plaintiff's alleged pain and mental impairments; 3) the ALJ improperly found no exertional impairments and improperly applied the grids; and 4) the ALJ did not determine if Plaintiff could hold a job for a significant period of time.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.  Once that showing is made, the burden shifts to the

Commissioner to show: (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.  To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §404.1520. At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past. At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience. If a determination of disabled or not disabled is found at any step, further inquiry is not required. 20 C.F.R. §404.1520.

4

8. Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full

consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.   Plaintiff failed to carry her burden in establishing that she has a disabling impairment.  To qualify for benefits Plaintiff must demonstrate, in accordance with the relevant portion of Section 223(d) of the Act, 42 U.S.C. §423(d), that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for at least 12 months.  42 U.S.C. §416(1)(10).  The Act defines a physical or mental impairment as one "that results from anatomical, physiological or psychological abnormalities which are demonstrated by medically acceptable clinical or laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). The Commissioners' regulations require claimants to support their allegations through medically acceptable clinical and diagnostic techniques.  20 C.F.R. §404.1513.

11.   Plaintiff alleges she has disabling seizures.  However,

the record does not support such a finding.  Rather, the report contains substantial evidence that Plaintiff's seizures may be controlled by medication.  In 1992 Plaintiff stopped taking her anti-seizure medicine, Dilantin, for four years due to its side effects.  In September of 1996, Michael Baten, M.D. prescribed Depakote, a different anti-seizure medication.  Tr. 89-90. Plaintiff has failed on a consistent basis to take her medication as prescribed.  The record contains blood tests in which Plaintiff's physicians would test for her level of Depakote.  The results of all tests except one show a low therapeutic level of Plaintiff's anti-seizure medication.  Tr. 95, 115, 116 and 118. The one time that Plaintiff used the medicine sufficient to get her blood level to a "low normal" range, the frequency of her seizures decreased. Tr. 93. Dr. Cambron said that an increase in Depakote "could also lead to disappearance of the rare seizures she is still having." Id.  An impairment that can be controlled with medication is not disabling within the meaning of the Act.  Pacheco v. Sullivan, 931 F.2d 695, 697 (10th Cir. 1991); Diaz v. Secretary of HHS, 898 F.2d 774, 777 (10th Cir. 1990); 20 C.F.R. Sec. 416.930(b).

12.   Plaintiff argues that she cannot afford her seizure medicine.  However, the Agency documentation in the record demonstrates that she was able to obtain Depakote without any cost if she proved she could not afford to pay for the mediation.  Tr. 81 and 82.  The Agency also  determined that medical treatment at no charge was available to her through a clinic, Health Centers of

Northern New Mexico. Tr. 81. There is no evidence in the record that Plaintiff availed herself of these benefits. The ALJ properly considered this part of the record in his decision.

13. Further, the physical evidence supports the finding that Plaintiff's seizures are not disabling. Her electroencephalograph (EEG) conducted on March 11, 1998 was normal. Tr. 127.

14. Plaintiff alleges she has "bone problems "and that the ALJ did not properly develop the record at the administrative hearing level regarding this alleged impairment. The hearing transcript demonstrates otherwise. When the ALJ asked what physical problems she had the Plaintiff testified she had "seizures and bone problems." Tr. 139. Plaintiff then testified that her physician said her bone problems were a result of taking Dilantin. Tr. 140. She quit taking the Dilantin in 1992. She was also told that these problems may be a result of her arthritis or falls due to her seizures. It is clear from the record that the ALJ did develop this alleged impairment at the administrative hearing.

15. Plaintiff argues that the ALJ did not develop the record concerning her other alleged impairments that produce pain. The medical records do not provide an objective basis for an impairment which causes disabling pain. Plaintiff cites to many pages in the record. However, these are not medical records but rather Plaintiff's subjective statements. Plaintiff's subjective complains alone cannot establish a disability. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). As her treating

physician wrote on October 16, 1996, [s]he complains of various aches and pains. I don't find any signs on examination to be concerned about at this point in time." Tr. 93.

   16.   Plaintiff asserts she has arthritis with rheumatism. Tr. 76. She did have a positive rheumatoid factor test result in 1994. Tr. 99. This test was repeated on two occasions during the relevant time period. Both revealed negative results. Tr. 108 and 115. There are no other medical records on this alleged impairment.

   17.   Plaintiff alleges that carpal tunnel is a pain-producing impairment. There are only two notations in the record on carpel tunnel. It was diagnosed in 1995, a year before her filing date and almost two years before she actually stopped working. It improved with the use of a splint. Tr. 103 and 104. The other note was from 1998 when a physician recommended that Plaintiff use a "splint, NSAIDS, and p.t. [which] help 90%." Tr. 126. The record does not contain any evidence that Plaintiff followed the prescribed treatment or that she was in the 10% of the population who would not be helped by this treatment.

   18.   Plaintiff further asserts that she had a "positive C reactive protein lab test." Tr. 108. That test was performed on July 27, 1996, two months before Plaintiff filed for benefits. Plaintiff worked until September of 1996. Tr. 138. Thus, that test results did not establish pain sufficient to prevent the Plaintiff from working. Furthermore, by July 6, 1997, that test

was negative. Tr. 115.

19.  Plaintiff argues that the ALJ should have considered her stomach ailments.  The record indicates that she had symptoms suggestive of gastroesophageal reflux disorder (GERD) in 1995, two years prior to the relevant time.  Her physician told her that her symptoms could be alleviated if she quit smoking and prescribed antacids.  Tr. 102.  She continued to smoke. This mitigates against finding a disability.  Decker v. Chater, 86 F.3d 953,955(10th Cir. 1996); 20 C.F.R. Sec. 416.930(b).

20.  Plaintiff's own testimony do not support her allegation that she is disabled.  Tr. 18 and 145.  At the administrative hearing Plaintiff testified that she was not physically restricted from working.  Tr. 115.  She also submitted evidence in the record that she could work for an hour, stand for an hour and sit for three hours.  Tr. 57.  She takes care of her personal needs and goes fishing and hunts for rocks as hobbies.  Tr. 69.  Plaintiff also testified that she had had seizures for eleven years and that over these years her seizures had not gotten better or worse.  Tr. 145.

21.  Plaintiff asserts she is depressed, anxious and cannot sleep. Again, the medical records do not support that any of these are disabling.  Plaintiff did not allege a mental impairment in her application materials nor at the administrative hearing. Plaintiff's treating physicians have never diagnosed Plaintiff with a mental problem, or prescribed medications or suggested any

counseling or treatment for a mental problem. There is no objective medical evidence of a mental impairment during the relevant time frame. In July of 1996, Dr. Cambron noted that Plaintiff was anxious and nervous that they may have been going through menopause. Tr. 101. Dr. Baten wrote in a note in September of 1996 that Plaintiff's "mentation is normal." Tr. 89. In July of 1997, Dr. Cambron noted that Plaintiff had a flat affect. Tr. 114. These notes do not sufficiently raise an issue which would require further inquiry. Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997)(ALJ does not have to exhaust every line of inquiry; the ALJ must develop the record as to material issues). Further, as the ALJ did not find a mental impairment, he was not required to discuss it in combination with Plaintiff's seizure disorder. Id.; Andrade v. Secretary of HHS, 985 F.2d 1045, 1048 (10th Cir. 1993).

22.   Plaintiff asserts that the ALJ erred in using the grids. The ALJ did not apply the grids but rather used the grids as a framework in this Plaintiff because he also found that Plaintiff had some environmental restrictions. The ALJ specifically found that Plaintiff could not work "around heights, or around dangerous chemicals, open fires, exposed wires, or breakable items." Tr. 18. The regulations state that there are "[a]pproximately 200 separate unskilled sedentary occupations." 20 C.F.R. Pt. 404, Subpt. P, App.2, Sec. 201.00. Ruling 96-9p states that "few occupations in the unskilled sedentary occupation base require work in

environments with...unusual hazards." These hazards include "moving mechanical part of equipment, tools or machinery; electrical shock; working in high, exposed places;...and exposure to toxic caustic chemicals." SSR 96-9p. The Ruling further states that "[e]ven a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupation base." Id.

23.  The ALJ properly relied on the grids as a framework and determined that there was work available to the Plaintiff in the national economy in significant numbers. Tr. 19. His application of the grids provides substantial support for his decision she Plaintiff is not disabled. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995).

## Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**